**FILED**

1 | **ANDREW C. BAILEY**
2500 N. Page Springs Rd
2 | Cornville, AZ 86325
3 | 928 634-4335
*Self-represented Litigant*

4 | ## UNITED STATES BANKRUPTCY COURT

5 | ## FOR THE DISTRICT OF ARIZONA

6 |

| In re: | **Chapter 11** |
|---|---|
| **ANDREW C. BAILEY** | **Case # 2:09-bk-06979-PHX-RTBP** |
| Plaintiff/Respondent | Adversary case # 2:09-ap-01728-RTBP |
| | |
| Vs | |
| | **PLAINTIFF'S MEMOMORANDUM** |
| THE BANK OF NEW YORK MELLON, f/k/a | **OPPOSING DEFENDANT'S MOTION** |
| THE BANK OF NEW YORK (BONY); | **TO DISMISS, AGREEMENT FOR A** |
| CWALT, INC. ALTERNATIVE LOAN TRUST | **MORE DEFINITE STATEMENT,** |
| (CWALT); BAC HOME LOANS SERVICING | **AND PROVIDING A MORE** |
| LP, f/k/a, COUNTRYWIDE HOMES LOANS; | **DEFINITE STATEMENT** |
| (BAC) | |
| COUNTRYWIDE HOMES LOANS; (CHL) | |
| MORTGAGE ELECTRONIC REGISTRATION | Subject property: |
| SYSTEMS, INC (MERS) | 2560 N. Page Springs Road, |
| Defendants/ Movants | Cornville, AZ 86325 |

Defendants, by and through their attorneys, have filed a two-part motion (the Motion)

requesting dismissal of Plaintiff's adversary proceeding 2:09-ap-01728-RTBP pursuant to

F.R.C.P 12(b)(6), and alternatively, if the court does not dismiss the proceeding in its

entirety, that the Court shall order the Plaintiff to provide a more definite statement of his

causes of action and the relief sought, and to elucidate his request for a declaratory

judgment. Plaintiff OPPOSES the first part of Defendants' Motion, and has NO

OBJECTION to the second.

Plaintiff opposes and rebuts Defendants' Motion to Dismiss Plaintiff's Amended Complaint

for Enforcement of the RESPA/TILA Qualified Written Request (QWR) and Temporary

Restraining Order (the Motion). The primary statutory predicate for the relief requested in

the Complaint is Federal Rule of Bankruptcy Procedure 7001(2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), and Federal Rule of Bankruptcy Procedure 7001(9) to obtain a declaratory judgment relating to the foregoing. Plaintiff asks that this Court deny the Motion with prejudice. Plaintiff reiterates and re-affirms his request that this Court enforce the QWR or another form of discovery and for a Temporary Restraining Order when and if needed pursuant to Fed. R. Civ. P. 65(b) and Fed. R. Bankr. P. Rule 7065 enjoining Defendants from taking any action against him or his property until a declaratory judgment in the matter has been issued by this Court. At the time the Complaint was filed, Plaintiff was facing a lift stay action by Defendant BONY, which was subsequently denied by this court. Plaintiff concedes that a TRO does not seem necessary at the present time.

Plaintiff has no objection to providing "a more definite statement" although he asks the Court to note that unambiguous and definite statements have repeatedly been offered, as the record before the Court makes clear. Both the QWR and DVL and Plaintiff's First Set of Interrogatories and Request to Produce Documents are abundantly clear in this regard.

Plaintiff respectfully requests that the Court allow discovery in this matter, either by enforcing the QWR or by ordering Defendants to answer Plaintiff's Interrogatories and Request to Produce Documents or by any other means the Court deems just and proper.

In support of this opposition and rebuttal, Plaintiff references and incorporates hereby the entire record in the adversary matter and the entire record in lead Case # 2:09-bk-06979-RTBP, this Memorandum, Neil Franklin Garfield's Supplemental Memorandum and EXHIBITS "A" and "B", *[Preliminary Mortgage Audit Exhibit "A"; Securitization Flow Chart Illustration Exhibit "B"]* and declares and states as follows:

# INTRODUCTION

Plaintiff has for many months and in various ways sought answers to the questions: Who is my creditor? How do I contact them? How much do I owe them? Plaintiff has repeatedly asked Defendants for production of certain documents and for a full accounting. These requests have been ignored or denied despite a clear statutory duty to respond. Defendants are seeking dismissal on technical grounds rather than complying with their statutory duty to provide the information requested in the QWR and DVL. A copy of the Master Pooling and Servicing Agreement and all Supplements thereto has been requested and steadfastly withheld.

Those documents are a matter of public record, but Plaintiff has no access to the record without an expensive subscription. All Defendants have to do is provide the URL at http://www.secinfo.com or produce the documents. That document and its supplements would go a long way toward establishing the identity of the various parties described as "John Does", necessary and indispensable parties to the action, and the rights and responsibilities among all the parties. Apparently, Defendants are reluctant to have this information disclosed, although in theory it should support their position.

## Cause of Action – a Clarification

The cause of action is that Defendants failed to follow federal statutes and refused to provide essential information about Plaintiff's account, and that certain of the Defendants who are neither the creditor nor an agent of the creditor are improperly attempting to foreclose on Plaintiff's home, while refusing to disclose the identity of the creditor and refusing to provide a full accounting of his account.

The result of Defendants' failure and refusal is that there is doubt as to whether the right parties, to wit the real party or parties in interest, are noticed and joined in this action, which is an obvious threshold requirement for the Court to have jurisdiction.

## Relief Sought

Plaintiff is asking the Court to allow discovery, to enforce the QWR and DVL pursuant to RESPA, TILA and the FDCPA, and to order Defendants to comply with the statutes and to answer Plaintiff's First Set of Interrogatories and Request to Produce Documents.

## Statutory Predicates

The primary statutory predicate for the relief requested in the Complaint is Federal Rule of Bankruptcy Procedure 7001(2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d), and Federal Rule of Bankruptcy Procedure 7001(9) to obtain a declaratory judgment relating to the foregoing. Other statutes including TILA, RESPA and the FDCPA apply without limitation.

## Declaratory Judgment

Plaintiff has an inalienable right to all information concerning his creditors and the status of his account with them, including all parties in the chain of title and the chain of securitization. Once this information has been disclosed and analyzed, the Court will be in a position to make an informed declaratory judgment as to the standing and the rights and responsibilities of all parties in interest. Plaintiff believes there is a cloud on the title to the Property rendering it unmarketable. A quiet title action may be necessary.

## Background Material Facts

1. The Complaint and Amended Complaint is an Action for enforcement of the QWR and DVL and for discovery, and if necessary for a TRO to maintain the status quo.

2. On September 21, 2009 Plaintiff served a QWR and DVL upon Defendant BAC, to

which there has been no response or acknowledgement, in violation of the relevant statutes.

3. On December 11, 2009 Plaintiff served a QWR and DVL upon BONY to which there has likewise been no response or acknowledgement, in violation of the relevant statutes.

4. There are serious consequences for non-response and dishonor of the statutes, which are clearly delineated in the QWR and DVL. Plaintiff's Complaint and amended Complaint ask the court to enforce the default provisions of the QWR.

5. On December 23, 2009, Plaintiff filed the instant adversary proceeding, asking the Court to enforce the RESPA/TILA QWR and DVL.

6. On January 12, 2010 Plaintiff filed a consolidated motion in the lead case for expedited discovery in the matter, which Judge Redfield T. Baum denied. Plaintiff was instructed to pursue discovery in the adversary proceeding.

7. On January 12, 2010 Plaintiff served his First Set of Interrogatories and First Request to Produce Documents on Defendants.

8. On January 19, 2010 Plaintiff filed the instant Amended Complaint.

9. On September 3, 2009 BAC filed a Proof of Claim in the amount of $486,401.44. On information and belief, this claim is improper and even if valid, appears to be inflated by at least $15,000.

10. On November 12, 2009 BONY filed a Motion for Relief from the Automatic Stay.

11. On February 2, 2010 this Court denied BONY's Motion for Relief from the Automatic Stay.

### Who is the Holder in Due Course?

None of the named Defendants appears to be the current beneficiary or holder in due course, or can claim an agency relationship with the current beneficiary or holder in due course. In fact, a holder in due course may not exist, having been deconstructed and eliminated during the securitization process.

### Rule 12(b)(6): The Cause of Action

Defendants' Motion asserts that the Complaint fails to state a claim upon which relief can be granted and that the Complaint should therefore be dismissed under Rule 12(b)(6). The causes of action are that Defendants violated federal statutes and refused to provide essential information about Plaintiff's account, that certain of the Defendants who are not the creditor or an agent of the creditor are improperly attempting to foreclose on Plaintiff's home while refusing to disclose the identity of the creditor and refusing to provide a full accounting.

### Service of the QWR

The Motion may apply with regard to certain of the named defendants, (no QWR was served on them) but is certainly not applicable to Defendants BAC and BONY upon whom the QWR was properly served and in regard to which they have chosen to remain silent. Defendants' attorneys had made appearances for the Defendants in the lead case, and thus

the QWR was appropriately served through Defendants' attorneys of record. The cover letter to the QWR requested that the attorneys of record forward the QWR to their clients for immediate action. The QWR was served <u>through</u> the attorneys, not <u>on</u> the attorneys.

**Plaintiff's Request for a Temporary Restraining Order**

A premature foreclosure before discovery would deny the Plaintiff due process and cause irreparable harm to him, his businesses, his family, his partners, and his creditors, and would unjustly enrich the Defendants, none of whom "have any skin in the game". None of the named Defendants ever put up any money. On the contrary, the named Defendants have profited, possibly very substantially, from the Transaction, as the full accounting will almost certainly show. In the event of a premature foreclosure before discovery, Plaintiff's request for a Temporary Restraining Order pursuant to Fed. R. Civ. P. 65(b) and Fed. R. Bankr. P. Rule 7065 would seem appropriate.

**What is Plaintiff Seeking?**

In the simplest of terms, Plaintiff is seeking the following:

1) The identity of his creditor(s), one or more of whom may be necessary and indispensable parties and whose identity is hidden in the chain of securitization.

2) An accounting of all credits and debits related to the referenced transaction including all third-party transactions.

**Who is the Creditor?**

In the age of securitization, credit default swaps and federal bailouts, the above is not as straightforward as it was before the year 2000. There is no dispute that this loan was securitized. In a securitized "loan", the "loan originator" or "loan servicer" is rarely if ever

the creditor, i.e. the investor, i.e. the person who actually puts up the money to fund the loan. The creditor or investor is rarely if ever identified on the loan documents. The "lender" identified in the "loan" documents is falsely identified, in this case as CHL, which was the "loan arranger" and alleged subsequent servicer, not the lender. None of the named Defendants in this case appears to be a creditor, under any accepted definition of that term. Only one or more of the "John Does" might qualify as a creditor. Such parties are necessary and indispensable parties pursuant to Rule 19 and are not joined in this litigation. Further, a "trustee" for a mortgage-backed asset "trust" is not a creditor. Neither is such a "trust" a creditor. Such a "trustee" or "trust" might claim to have authority from the creditor, but cannot claim to represent an undisclosed principal.

**The Alphabet Problem**

As we can see from the securitization charts (EXHIBITS "A" and "B"), Entity A (CHL) originated the "loan" secured by Plaintiff's Property and apparently sold it to Entity B (a mortgage warehouser – EMC Mortgage Corporation) who "sliced and diced" it along with hundreds or thousands of other mortgage loans, and sold part or all of it into Entity C (CWALT Inc, a Special Purpose Vehicle) who sold certificates via Entity D (ALT 2007-HY4, a "trust", and BONY, a mortgage-backed securities "trustee") and other conduits, REMICs and intermediaries to Entities E, F, G and so on, investors or groups of investors in Wall Street securities or derivatives. The creditor would logically be one or more of E, F or G, who actually put up the money and stands to lose it in the event of a default. None of the transfers were ever properly recorded as true sales except perhaps for the first two, A and B, neither of whom can claim to be creditors. Entity E, F or G etc, the creditor who actually put up money, a necessary and indispensable party to this action, is not identified or present in the instant case. The role of holder in due course ceases to exist in a

securitized loan, because even if a creditor could be identified, no beneficial interest or partial interest was ever transferred to that creditor.

**What Does the Plaintiff Owe?**

The obligation created by the note may have been paid in whole or in part by third parties. These third-party payments include but are not limited to the proceeds of credit default swaps, insurance and allocations from the Toxic Assets Recovery Program (TARP). The note may or may not be in default. Default has been alleged and presumed but never accounted for. The borrower has never received any accounting of these third-party payments, the existence of which is far from speculative. This is a major subject of Judge James M. Peck's January 2010 ruling in the Lehman Brothers bankruptcy case. The same principles apply in the instant case.

**Issues of Fact**

Plaintiff has raised genuine issues of fact. It is Plaintiff's inalienable right under Federal and State law to have access to such fundamental information about his account. Only when a full accounting has been provided, including all third-party payments, will Plaintiff and his analysts know who his creditor is and how much he owes them.

**How is Plaintiff to get this Information, if not from Defendants?**

Plaintiff has done everything in his power to acquire this information, including but not limited to the serving of QWRs and DVLs under RESPA, TILA and FDCPA on Defendants, a Mortgage Audit, the filing of a Motion for Expedited Discovery, and the serving of a First Set of Interrogatories and First Request to Produce Documents on Defendants.

**Defendants will not Co-operate**

Defendants continue to stonewall, steadfastly refusing to comply with federal statutes, and avoiding legitimate questions in discovery, while pursuing foreclosure.

**This is not a "Show me the Note" Strategy**

Plaintiff has maintained *ab initio* that Defendants lack standing to initiate and maintain a foreclosure action against the Property, independently of whether or not they "possess" the promissory note or a copy thereof. This is more than a "show me the note" strategy. Defendants are not the owners of the note, so possession of the note is irrelevant. Defendants have failed to prove any right or authority to enforce the note. BAC is a servicer and not a creditor. Neither is BONY a creditor in the instant case, under any accepted definition of that term. BAC as servicer has no right to foreclose without documented and timely authority from the creditor, who remains undisclosed and unidentified.

**If Defendant is not a Creditor, is it an Agent for the Creditor?**

If the parties want to assert that they are not the creditor but are the agent for the creditor they must disclose who the creditor is. They must produce documentation that proves they are the agent of the creditor and their agency relationship with the creditor. They cannot assert that they are suing on behalf of an undisclosed principal. BAC is not a creditor, neither is BONY a creditor. BONY clearly sold the subject transaction into asset-backed securities so the creditors would be the actual people who parted with the money, to wit, the investors. If Defendants have timely documented authority from the creditor, let them produce it. This is exactly what Plaintiff is seeking.

**Allegation that Plaintiff's Claims are Speculative**

Defendants state: "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (citations omitted). The factual allegations of the Complaint fail to raise more than a speculative right to relief."

What is clear from the preliminary forensic analysis is that the subject transaction is subject to multiple agreements among other parties in the securitization chain, the scope and effect of which have yet to be determined. *(See Lehman's BK case. Judge James M. Peck. January 2010 ruling.)* Plaintiff was not a party to these agreements, neither were they disclosed to him at any time.

There can be no dispute that this loan was securitized. The parties executed certain documents months before they did any deal with Plaintiff and years before the transfer of beneficial interest in the subject transaction to BONY. The question is, what is the effect if any of those documents on the Plaintiff's "loan"? Who really owns what? The Master Pooling and Servicing Agreement by and between CHL and BONY, once provided, will reveal some but not all of this information, but continues to be withheld.

Far from being speculative, Plaintiff's factual allegations are the best he and his analysts can do in view of the stonewalling by Defendants. Either the accounting will show there is a balance due to the Defendants, or it will show that there is not a balance due to the Defendants. It might show there is a balance due to Plaintiff or to the investor or both. We won't know until we see a full accounting of the money and we see the documents by which the Defendants took the money.

The above has to be interpreted in the light of Judge Peck's ruling regarding the prioritization of third-party payments in the Lehman bankruptcy. The fact that Judge Peck has ruled on the prioritization of those payments and has recited in his ruling that they exist is all Plaintiff needs to assert that his allegations are far from speculative.

## Has the Obligation been Paid?

Defendants have not and cannot claim that the obligation has or has not been paid by third party payments. The obligation may or may not be in default. This is a genuine issue of fact. Plaintiff is simply asking what anyone would ask in small claims court. How much do I owe, who do I owe it to, what payments have you received, did you credit all the payments, and who got paid in this transaction? Under TILA Plaintiff has the right to know who made money all the way up the securitization chain. If Defendants didn't disclose the other players in the scheme at or before the "closing" there are other liabilities, but first Plaintiff needs to know if anybody did get paid. He can't know that unless Defendants comply with the statutes. That is the purpose of the QWR.

We know that third party payments occurred. We know they're an issue. We don't know who they came from, where they went, how they were allocated and whether they should be allocated to Plaintiff's mortgage. If paid in exchange for any interest or insurance obligation on the pool the mortgage was in, then some part of that should be allocated to the mortgage.

## No Right to Pursue Foreclosure

In the meanwhile neither Defendants nor anyone else have any right to pursue foreclosure until and unless they come forward and show with certainty they are the creditor i.e. the holder in due course, or the agent of that creditor or holder.

## Plaintiff's Expert Declaration

According to Plaintiff's expert declaration Defendants may be avoiding discovery because they don't want to account for what happened in the securitization process and how much they took in fees. This will be revealed if the Court allows discovery. The declaration says that in Plaintiff's loan Defendants may have taken as much in fees as they did to fund the loan, without telling the investor. This was apparently standard procedure. So of course

Defendants don't want to provide an accounting.

Plaintiff is no expert in securitization. However, he has a securitization expert who has executed an affidavit saying exactly the foregoing. Plaintiff won't know if the expert is right or wrong until he gets an accounting, an accounting that he is entitled to. Defendants are stonewalling, which may indicate that the expert is right.

**Presumption of Default**

A notice alleging default has been recorded. However, no documentation has ever been provided proving that Plaintiff's account is in default. Once again, until and unless a full accounting is provided, Plaintiff does not concede that he is in default.

**CONCLUSION**

Absent a Court order enforcing the QWR and allowing discovery, there are numerous genuine issues of fact concerning the validity and ownership of the Note, the validity and ownership of the Deed of Trust, the presumption of default, the identity of necessary and indispensable parties, the status of the Plaintiff's account, and other factors that are unknown and have not voluntarily been disclosed by the Defendants. Whether or not the Plaintiff's Complaint was procedurally correct, the fact remains that he has a right to the information requested.

Without this information, the court is prevented from deciding the case on the merits, which could cause an open-ended liability for and against multiple parties, many of whom seem to have claims or be possessed of colorable claims to the same obligation, note, mortgage and bond. It is therefore appropriate and necessary that the Court enforce the QWR or other discovery.

**Relief Sought**

The Complaint is a legitimate request to the Court for enforcement of discovery, which is essential if the disputed matters are going to be resolved. Therefore the Complaint should not be dismissed, and the Defendants should not be dismissed from the action. Defendants' Motion to Dismiss should be denied with prejudice.

**WHEREFORE** Plaintiff respectfully requests that this Court deny the Defendants' Motion to dismiss the Plaintiff's Amended Complaint, with prejudice. Plaintiff further respectfully re-affirms his request that this Court enforce the QWR and other forms of discovery and that this Court impose a Temporary Restraining Order, when and if necessary and appropriate. Plaintiff further affirms his willingness to provide "a more definite statement" and asks for clarification as so exactly what that would mean in view of the clear statements already in the record.

Respectfully submitted this 9th day of March, 2010.

Andrew C. Bailey, *Plaintiff*

<u>Supplemental Memorandum from Expert Witness Neil Franklin Garfield MBA JD.</u>

It appears as though Defendants are attempting to proceed on the assumption that payments are due, that there is no equity in the property, and that Defendants know the value of the property. It also appears as though Defendants are attempting to proceed on the presumption of default. On the value of the property, I am unaware of any appraisal at any time that conforms with uniform national standards. Hence a presumption of valuation is an opinion for which there is no factual foundation, insofar as the information supplied to this expert or to this Court.

It further appears that Plaintiff has made every attempt through letters authorized by federal statute (Qualified Written Request) and through discovery through civil procedure to obtain the answers to questions directed at identifying the creditor and obtaining an accounting of all credits and debits allocable to the subject transaction with Plaintiff and all parties and third parties.

Recent press reports indicate that investment banks received such third party payments without any accounting to the investors who advanced the funding (the creditors) or to the borrower, and without any color of ownership of the obligation, note, mortgage or bond regardless of whether one looks from the prospective of the original obligation of the borrower or the contemporaneous obligation of the special purpose vehicle (SPV) that issued the mortgage-backed bond.

Since the creditor has been identified (or at least alleged) as the holder of mortgage backed security, and since no accounting from the creditor has been forthcoming because the Defendants have either not forwarded the request, nor identified the creditor, nor has the creditor accounted for any third party payments received from Federal bailout, insurance or

counterparty hedge instruments, it is impossible to state whether any of the premises relied upon by Defendant are true, partially true, or false. In my opinion it is far more likely that not that the presumptions of the Defendant are false in their entirety.

Considering news reports and other sources used by Plaintiffs' expert stating that third party payments were in fact received by participants in the securitization chain, it is apparent that the Defendants have not made any attempt to allocate such third party payments. Although there are inconsistencies in the Defendants' allegations of amounts due it is apparent that they are relying on the note and payments of the debtor alone and credited toward the homeowner's note alone. The homeowner's note is evidence of the homeowner obligation. Payments by the homeowner reflect only a partial rendition of a full accounting of the status of the obligation. By not accounting for the entire obligation and limiting their demands to the note, the parties asserting rights to collection or enforcement are excluding the largest part of the accounting on the subject obligations (the evidence of which are the homeowner's note, the SPV bond, bailout agreements, assignments, sales, transfers, subrogation, counterparty agreements, pooling and service agreements, assignment and assumption agreements, distribution reports, declarations of default on the bond, declarations of default on the pool and declarations of reduction in market value of the pools and/or securities).

Based upon published reports and admissions from the defendants in other forums, it appears that they often received such payments while retaining purported ownership of the "toxic assets." In my opinion, any such alleged ownership was strictly as constructive trustee for the investors who purchased the mortgage backed bonds. Further, it is my opinion that it is far more likely than not that such receipts were neither reported nor disclosed to the real parties in interest, i.e. the homeowner who advanced a home as collateral for the first obligation originated as a home loan, and the investor who advanced money for second obligation for the funding of the "home loans."

Thus, as an expert in the securitization of residential loans, it is my opinion that it is far more likely than not that the refusal of Defendant to provide the complete accounting for all debits and credits attributable to the obligation prevents this Court from perceiving all the evidence which is available but which is withheld. This Court is thus prevented from deciding the case on the merits, which could cause an open-ended liability for and against multiple parties, many of whom seem to have claims or be possessed of colorable claims to the same obligation, note, mortgage and bond.

Further affiant sayeth naught,

_____

/s/ Neil Franklin Garfield MBA JD

1

2
**Certificate of Notice**

3
Copy of the foregoing was

4
mailed on 9th March, 2010 to:

5

6
U.S. Trustee

7
Office of the US Trustee
230 N. First Avenue, Suite 204,

8
Phoenix, AZ 85003

9
Larry Lee Watson

10
Office of the US Trustee
230 N. First Avenue, Suite 204,

11
Phoenix, AZ 85003

12
Jennifer A. Giaimo
Office of the US Trustee

13
230 N. First Avenue, Suite 204,
Phoenix, AZ 85003

14

15
Robert J. Miller (#013334)
Kyle S. Hirsch (#024155)

16
BRYAN CAVE LLP
Two N. Central Avenue, 22nd Floor

17
Phoenix, Arizona 85004-4406

18

19

20

21

22

23

24

25

### Bailey property
### 2560 N. Page Springs Road
### SEC Filings - http://www.secinfo.com/drjtj.u41s.htm#1stPage



**Assignment of the Mortgage Loans**

Pursuant to the pooling and servicing agreement, on the closing date, the depositor will sell, transfer, assign, set over and otherwise convey without recourse to the trustee in trust for the benefit of the certificateholders all right, title and interest of the depositor in and to each Mortgage Loan and all right, title and interest in and to all other assets included in Alternative Loan Trust 2007-HY4, including all principal and interest received on or with respect to the Mortgage Loans, but not any principal and interest due on or before the cut-off date.

In connection with the transfer and assignment of each Mortgage Loan, the depositor will deliver or cause to be delivered to the trustee, or a custodian for the trustee, the mortgage file, which contains among other things,

- the original mortgage note (and any modification or amendment to it) endorsed in blank without recourse, except that the depositor may deliver or cause to be delivered a lost note affidavit in lieu of any original mortgage note that has been lost;

- the original instrument creating a first lien on the related mortgaged property with evidence of recording indicated thereon or a copy of such instrument;

- an assignment in recordable form of the mortgage or a copy of such assignment;

- the original or a copy of the title policy with respect to the related mortgaged property; and

- if applicable, all recorded intervening assignments of the mortgage or copies thereof and any riders or modifications to the mortgage note and mortgage or copies thereof (except for any documents not returned from the public recording office, which will be delivered to the trustee as soon as the same is available to the depositor).

## Use of Proceeds

The net proceeds to be received from the sale of the securities will be applied by the depositor to the purchase of Trust Fund Assets or will be used by the depositor for general corporate purposes. The depositor expects to sell securities in series from time to time, but the timing and amount of offerings of securities will depend on a number of factors, including the volume of Trust Fund Assets acquired by the depositor, prevailing interest rates, availability of funds and general market conditions.

## The Depositor

CWALT, Inc., a Delaware corporation (the *"depositor"*), was incorporated in May 2003 for the limited purpose of acquiring, owning and transferring Trust Fund Assets and selling interests in them or bonds secured by them. The depositor is a limited purpose finance subsidiary of Countrywide Financial Corporation, a Delaware corporation. The depositor maintains its principal office at 4500 Park Granada, Calabasas, California 91302. Its telephone number is (818) 225-3000.

The depositor's obligations after issuance of the securities include delivery of the Trust Fund Assets and certain related documents and instruments, repurchasing Trust Fund Assets in the event of certain breaches of representations or warranties made by the depositor, providing tax-related information to the Trustee and maintaining the trustee's first priority perfected security interest in the Trust Fund Assets.

Neither the depositor nor any of the depositor's affiliates will insure or guarantee distributions on the securities of any series.

## Loan Program

The loans will have been purchased by the depositor, either directly or through affiliates, from sellers. The applicable prospectus supplement may provide for the underwriting criteria used in originating the loans, but if it

does not, the loans so acquired by the depositor will have been originated in accordance with the underwriting criteria specified below under *"Underwriting Standards."*

**Underwriting Standards**

Underwriting standards are applied by or on behalf of a lender to evaluate the borrower's credit standing and repayment ability, and the value and adequacy of the related Property as collateral. In general, a prospective borrower applying for a loan is required to fill out a detailed application designed to provide to the underwriting officer pertinent credit information. As part of the description of the borrower's financial condition, the borrower generally is required to provide a current list of assets and liabilities and a statement of income and expenses, as well as an authorization to apply for a credit report which summarizes the borrower's credit history with local merchants and lenders and any record of bankruptcy. In most cases, an employment verification is obtained from an independent source (typically the borrower's employer) which verification reports, among other things, the length of employment with that organization and the borrower's current salary. If a prospective borrower is self-employed, the borrower may be required to submit copies of signed tax returns. The borrower may also be required to authorize verification of deposits at financial institutions where the borrower has demand or savings accounts.

**The Agreements**

Set forth below is a description of the material provisions of each Agreement which are not described elsewhere in this prospectus. The description is subject to, and qualified in its entirety by reference to, the provisions of each Agreement. Where particular provisions or terms used in the Agreements are referred to, those provisions or terms are as specified in the Agreements.

**Assignment of the Trust Fund Assets**

*Assignment of the Loans.* At the time of issuance of the securities of a series, the depositor will cause the loans comprising the related trust fund to be assigned to the trustee (or trust, in the case of a series with both notes and certificates), without recourse, together with all principal and interest received by or on behalf of the depositor on or with respect to the loans after the cut-off date, other than principal and interest due on or before the cut-off date and other than any Retained Interest specified in the related prospectus supplement. In the case of a series with both notes and certificates, the trust will pledge these assets to the trustee for the benefit of the holders of the notes. The trustee (or trust, in the case of a series with both notes and certificates) will, concurrently with the assignment, deliver the related securities to the depositor in exchange for the loans. Each loan will be identified in a schedule appearing as an exhibit to the related Pooling and Servicing Agreement or Sale and Servicing Agreement, as applicable. The schedule will include information as to the outstanding principal balance of each loan after application of payments due on or before the cut-off date, as well as information regarding the Loan Rate, the maturity of the loan, the Loan-to-Value Ratios at origination and certain other information.

In addition, the depositor will also deliver or cause to be delivered to the trustee (or to the custodian) for each single family loan or multifamily loan,

- the mortgage note or contract endorsed without recourse in blank or to the order of the trustee, except that the depositor may deliver or cause to be delivered a lost note affidavit together with a copy of the original note in lieu of any original mortgage note that has been lost,

- the mortgage, deed of trust or similar instrument (a *"Mortgage"*) with evidence of recording indicated thereon (except for any Mortgage not returned from the public recording office, in which case the depositor will deliver or cause to be delivered a copy of the Mortgage together with a certificate that the original of the Mortgage was delivered to the recording office),

- an assignment of the Mortgage to the trustee, which assignment will be in recordable form in the case of a Mortgage assignment, and

- any other security documents, including those relating to any senior interests in the Property, as may be specified in the related prospectus supplement or the related Pooling and Servicing Agreement or Sale and Servicing Agreement.

The applicable prospectus supplement may provide other arrangements for assuring the priority of assignments, but if it does not, the seller, the depositor or the trustee, as specified in the related Pooling and Servicing Agreement or Sale and Servicing Agreement, will promptly cause the assignments of the related loans to be recorded in the appropriate public office for real property records, except in states in which, in the opinion of counsel acceptable to the trustee, the recording is not required to protect the trustee's or the certificateholder's interest.



**Identify the Securitization Process** [validate debt]

**Mortgage Process** (traditional plus)

receive money!

**1a**

**Mortgage** [negotiable instrument note + trust deed = the 1st obligation]

nominee

MERS

borrower

**1a**

loan originators — trustee

**2**

**aggregator** [collector of negotiable instruments/ assets]

non-

**1b** → **?**

**1a**

bank

**3**

**P**

**L**

advance money!

Investor $

Investor $

Investor $

Investor $

**1**

**Investment Bank** [the originator/organizer of the securitization chain - agent for both investor & borrower]

**pool of mortgages** [the assets *aka* negotiable instruments]

**Securities** are issued to fund the purchase of the assets [pool of mortgages]; the "pool of mortgages" is then used as "collateral" for the issued securities. [the 2nd obligation]

**4**

trustee

**SPV or SPE** [the issuer] *special purpose vehicle* a tax exempt company or trust formed for the specific purpose of funding the assets (pool of mortgages) *special purpose entity* the managers of a set of mortgages (collateral)which is wholly separate from the institutions that created it

**CMO** collateralized mortgage obligation (a type of SPE)

**REMIC** real estate mortgage investment conduit (a type of SPV/ SPE)

**5**

cash flow to new owners of debt instrument

performance is linked to the performance of the assets (pool of mortgages)

**CDS** (credit default swap) this is a credit "derivative" used to change the credit quality of the underlying portfolio to be more acceptable to the "final investor"

**TARP funds** ()

3rd Party Source of Funds for the "debt instrument"

these type of Securities are known as ABS or MBS; at the time of issuance the security maybe "collateralized" or "will be collateralized" to become...the 2nd obligation.

over & under collateralization ()

**SIV** [the virtual bank] *structured investment vehicle* instead of gathering deposits from the public, it borrows money by selling short maturity (<1yr) commercial paper in the money market

trustee — SIV