IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANDREW BAILEY,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-bk-6979-RTBP<br><br>Adv. No. 09-ap-01728-SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |
| ANDREW BAILEY,<br><br>Plaintiff,<br>v.<br><br>THE BANK OF NEW YORK MELLON, as trustee of the CWALT, Inc. Alternative Loan Trust 2007-HY4 Mortgage Pass-Through Certificates, Series 2007-HY4; BAC HOME LOANS SERVICING LP; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC; John Does 1-20 inclusive; and all persons claiming by, through or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto,<br><br>Defendants. | MEMORANDUM DECISION |

## I. INTRODUCTION

Andrew C. Bailey, a debtor in a voluntary chapter 11 proceeding, filed a complaint against BAC Home Loans Servicing, LP ("BAC"); The Bank of New York Mellon

1

Case 2:09-ap-01728-SSC   Doc 48   Filed 07/30/10   Entered 07/30/10 09:31:36   Desc
Main Document    Page 1 of 8

("BONY"), in its capacity as trustee of the CWALT, Inc. Alternative Loan Trust 2007-HY4 Mortgage Pass-Through Certificates, Series 2007-HY4; Countrywide Home Loans Servicing, LP (erroneously named as Countrywide Home Loans) ("CHL"), and Mortgage Electronic Registration Service (erroneously named as The Mortgage Electronic Registration Service) ("MERS") (collectively, "Defendants")("Complaint") on December 23, 2009.[1] The Defendants have filed several motions to dismiss, leading to this Court ordering the Plaintiff to file several amendments to his complaint. Although the Court strongly urged the Plaintiff to retain counsel to assist him in proceeding with this Adversary, the Plaintiff has consistently refused for a variety of reasons. On May 27, 2010 the Plaintiff filed his Third Amended Complaint. The Defendants have filed the current Motion to Dismiss, which now requests that the Plaintiff's Adversary Proceeding be dismissed with prejudice. The parties have fully briefed the Motion to Dismiss, and the Court conducted oral argument on the Motion on July 15, 2010.

Because the Plaintiff and the Defendants refer to other parts of the administrative case file in support of their respective positions, the Court shall discuss these various declarations as a part of its decision. Because of the parties' reliance on pleadings other than the Complaint and the current Motion to Dismiss, the Court shall analyze the Motion to Dismiss as if it were filed as a motion for summary judgment.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2010).

## II. FACTUAL BACKGROUND

The Plaintiff executed a promissory note ("Note") on March 29, 2007. The

---

**1.** The Adversary Proceeding was designated No. 2:09-ap-01728-RTBP. Because the Honorable Redfield T. Baum entered an order of recusal from hearing any matter pertaining to Bank of New York Mellon, the undersigned judge was randomly assigned to hear the contested matters or adversary proceedings pertaining to these Defendants.

2

Defendant, Bank of New York Mellon, provided a series of endorsements on the Note, reflecting that Countrywide Bank, FSB, as the initial payee, transferred its interest to Countrywide Home Loans, Inc., which transferred its interest, by blank endorsement, to any holder in due course.[2]

At the same time, the Plaintiff executed a deed of trust concerning the property located at 2560 North Page Springs Rd, Cornville, AZ 86325 ("Deed of Trust"), which was recorded in Yavapai County on May 4, 2007.[3] The Deed of Trust serves as security for the repayment of the Note. The Plaintiff currently resides at the property and also utilizes it as a place for his business operations.[4]

On May 1, 2007, several months after the closing on Plaintiff's loan, Bank of New York became the trustee of the Alternative Loan Trust 2007-HY4 pursuant to a pooling and servicing agreement ("PS Agreement").[5] Pursuant to the PS Agreement, Countrywide Home Loans was the master servicer of all notes and deeds of trust placed in the pool of loans that constituted the corpus or res of the trust. The Plaintiff's Note and deed of trust were placed in the pool.[6]

Bank of New York has since changed its name to Bank of New York Mellon.[7] The Declaration also states that because Countrywide Home Loans, and certain affiliated or

---

**2.** *See* the Declaration of Jacqui E. Whitney, Docket Entry No. 180, in the administrative case, No. 09-bk-6979-RTBP. The Declaration has a series of endorsements set forth on the last page of the Note, which is Exhibit A to the Declaration.

**3.** Id. The duly recorded Deed of Trust is attached to Ms. Whitney's Declaration as Exhibit B.

**4.** The Debtor lists the following businesses on his schedules: Cameron Baxter Enterprises LLC, Cameron Baxter Films LLC, and Rancho Feliz LLC. *See* Docket Entry No. 27.

**5.** *See* Declaration of Ms. Whitney, Docket Entry No.180, in Administrative Case No. 09-bk-6979-RTBP.

**6.** Id.

**7.** Id.

3

related entities, were acquired by Bank of America, the servicing duties were transferred to one or more Bank of America entities.[8] BAC Home Loans Servicing LP is now the master servicer of the Plaintiff's Note and Deed of Trust. MERS is the original nominee under the Deed of Trust and still acts in that capacity.[9]

Bank of New York Mellon asserts that the Plaintiff has not made any payments on the Note in at least 24 months. The Debtor currently owes the principal amount of $456,390.66, accrued interest in the amount of $29,227.20, late fees and other charges in the amount of $12,000, negative escrow of $4,756.57, and $34 in other charges, for a total indebtedness of $491,698.93.[10]

In a separate declaration, Ms. Susan Elsner states that the Bank of New York Mellon and the Bank of New York Mellon Trust Co. entered into a separate Servicer Level Agreement in which Bank of New York Mellon Trust Co. was designated the agent responsible for all collateral documents to be held by Bank of New York Mellon as Trustee for the Alternative Loan Trust 2007-HY4 under the PS Agreement.[11] Ms. Elsner states that she has personally verified that the Note, with the various endorsements as set forth above, is in the possession of Bank of New York Mellon Trust Co. as the designated agent of Bank of New York Mellon as Trustee for the Alternative Loan Trust 2007-HY4.[12]

Mr. Micahel Cerchio, as Vice President in the Corporate Trust Services Department of the Bank of New York Mellon, formerly known as Bank of New York, states in his declaration that Bank of New York Mellon acts as Trustee of the Alternative Loan Trust

---

**8.** Id.

**9.** MERS is an acronym for the "Mortgage Electronic Registration System."

**10.** Id.

**11.** *See* the Declaration of Ms. Susan Elsner, Docket Entry No. 181, Administrative Case No. 09-bk-6979-RTBP.

**12.** Id.

4

2007- HY4, which consists of a pool of mortgage loans. CWALT, Inc., a Delaware Corporation, was the purchaser of the mortgage loans which have been placed in the pool held in Alternative Loan Trust 2007-HY4.[13] He confirms that Bank of New York Mellon Trust Co. is the agent responsible for maintaining custody of all of the collateral documents conveyed under the PS Agreement and that the Note and Deed of Trust in this case were delivered to Bank of New York Mellon Trust.[14]

Paragraph 20 of the Plaintiff's Deed of Trust states as follows:

> Sale of the Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.
>
> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrowers or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party thereto a reasonable period after the giving of such notice to take corrective action. . . ..

The Plaintiff hopes to controvert the information provided by the Defendants by filing a

---

**13.** *See* the Declaration of Mr. Michael Cerchio, Docket Entry No. 182, Administrative Case No. 09-bk-6979-RTBP.

**14.** Id.

5

declaration from Neil Franklin Garfield, "expert witness," dated January 17, 2010.[15] Without apparently reviewing any of the Declarations filed by the Defendants, Mr. Garfield speculates that the subject loan was "securitized;" that is, it "was sold to investors who were the source of funds."[16] Mr. Garfield also asserts that "[s]ince the sale of bonds to the investor is customarily a transaction that precedes the sale of the financial product sold to the property, it is my opinion that it may be fairly and reasonably assumed that at the time the documents were executed, the creditor was the bond holder, contrary to the nominal designations on the closing documents."[17] Mr. Garfield notes that by withholding the identity of the creditor/investor that actually provided the funding for the loan, the Defendants withheld from the Plaintiff the actual profits and fees that were made on the "multiple yield spreads and premiums paid."[18]

Of more importance is the Plaintiff's request for information as to the identity of the lender, the documentation authenticating the identity of the lender, and an accounting from the lender as to all money paid or received in connection with the subject obligation.[19] Although the Plaintiff has mischaracterized this request as the ability to delve into all of the transfers of the Note and what consideration was paid at the time of each transfer, certainly Plaintiff was entitled to an accounting of the payments that he made to the servicer concerning the Plaintiff's loan obligation. However, since the Defendants have provided detailed information as to the

---

**15.** The Declaration of Neil Franklin Garfield was filed by the Plaintiff in opposition to the Defendants' Motion for Relief from Stay. Docket Entry No. 133, Administrative Case No. 09-bk-6979-RTBP. The Declaration was also been filed as Exhibit C to the Plaintiff's Amended Complaint. Mr. Garfield never executed an original document that he or the Plaintiff filed with this Court. It is unclear whether the Plaintiff retains some type of executed original document.

**16.** Id. at p.5, para. 7, penultimate sentence.

**17.** Id. at p. 5, para. 7, last sentence.

**18.** Id. at pp. 5-6, para. 8, first sentence.

**19.** Id. at p. 6, para. 8.1. The Plaintiff also sent various letters to the servicer requesting information.

6

principal, accrued interest, negative escrow, late charges, fees, and other costs currently due and owing on the Plaintiff's obligation to the Defendants, it is impossible for this Court to ascertain what, if anything, the Plaintiff now contests. Does the Plaintiff want a detailed accounting of the accrued interest, what constitutes the negative escrow, the amount of the late charges, something else? Is the Plaintiff concerned that one of his payments has been improperly applied? Certainly the Court can order that the Defendants provide a detailed loan history so that the Plaintiff may understand how the Defendants have arrived at the aggregate amount of the Plaintiff's indebtedness.

The Plaintiff also alleges that he did not receive all, or what he received was incorrect, as to Federal Truth-in-Lending Disclosures. The Court is unable to resolve this issue, since the Defendants have failed, at least as of this point in the litigation, to provide the disclosures that were given to the Plaintiff at the time the loan was closed. The Court does not intend to proceed down a path of unlimited exploration into this discrete issue, but the Defendants should produce a copy of the disclosures given to the Plaintiff so that the Court may ensure that any such issue has been resolved on the merits.

### III. DISCUSSION

The Court appreciates the frustration of the Defendants, since the Plaintiff has been given three opportunities to amend his complaint and present a cognizable claim to this Court. It is still unclear what type of action the Plaintiff is asserting against the Defendants. Clearly because of the proceedings in this Court, the Defendants have standing concerning the underlying loan transaction. It is also clear that the Court was correct to vacate the automatic stay in this matter given the limited or summary inquiry that is normally done in such matters pursuant to Ninth Circuit law. Johnson v. Righetti, 756 F.2d 738 (9th Cir. 1985). However, the Plaintiff is entitled to certain information that may normally be provided to a borrower under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 (West 2010), the Federal Truth-in-Lending Act, 15 U.S.C. §§ 1601-1665 (West 2010), and/or the Real Estate Settlement Procedures Act, 12

U.S.C. §2605 (West 2010). It is also possible that the Defendants' position will be that the information was provided or that they have other possible defenses. However, rather than dismiss this action with prejudice, the Court will provide the Plaintiff with a final opportunity to file an amended complaint.

IV. CONCLUSION

Based upon the foregoing,

IT IS ORDERED that the Plaintiff's current request for relief, as set forth in Counts 1, 2, 3, 4, and 5, shall be denied.

IT IS FURTHER ORDERED that the Plaintiff shall have 21 days from the date of this Order to file a Fourth Amended Complaint which shall set forth cognizable claims that this Court may consider.

IT IS FURTHER ORDERED that given the posture of this adversary proceeding, the Court has no alternative other than to execute the order vacating the stay separately submitted by the Bank of New York Mellon.

IT IS FURTHER ORDERED that the Clerk's Office shall provide notice of this order to the Plaintiff, the Defendants, and the Defendants' counsel, and file an affidavit of service thereon.

DATED this 30th day of July, 2010.

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

**BNC TO NOTICE**