IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANDREW BAILEY,<br><br>Debtor. | Chapter 11<br><br>Case No. 09-bk-6979-RTBP<br><br>Adv. No. 09-ap-01728-SSC<br><br>(Not for Publication- Electronic Docketing ONLY) |
| ANDREW BAILEY,<br>       Plaintiff,<br>v.<br><br>THE BANK OF NEW YORK MELLON, as trustee of the CWALT, Inc. Alternative Loan Trust 2007-HY4 Mortgage Pass-Through Certificates, Series 2007-HY4; BAC HOME LOANS SERVICING LP; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC; John Does 1-20 inclusive; and all persons claiming by, through or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title thereto,<br>       Defendants. | MEMORANDUM DECISION DISMISSING COMPLAINT WITHOUT PREJUDICE |

## I. INTRODUCTION

Andrew C. Bailey, a debtor in a voluntary chapter 11 proceeding, filed a complaint against BAC Home Loans Servicing, LP ("BAC"); The Bank of New York Mellon

1

("BNY Mellon"), in its capacity as trustee of the CWALT, Inc. Alternative Loan Trust 2007-HY4 Mortgage Pass-Through Certificates, Series 2007-HY4 ("Trust"); Countrywide Home Loans Servicing, LP (erroneously named as Countrywide Home Loans) ("CHL"), and Mortgage Electronic Registration Service (erroneously named as The Mortgage Electronic Registration Service) ("MERS") (collectively, "Defendants") on December 23, 2009.[1] As background for this current decision, the Court has repeatedly encouraged or strongly recommended that the Plaintiff retain counsel to assist him. For a variety of reasons, the Plaintiff has consistently refused. This decision now considers the Defendants' Fourth Motion to Dismiss the Complaint. As to the first two motions to dismiss, the Court denied the relief requested by the Defendants and afforded the Plaintiff the opportunity to amend his Complaint. The Court entered decisions on the record as to the defects in the First Amended and Second Amended Complaint filed by the Plaintiff.[2] As to the Third Amended Complaint, the Court issued a Memorandum Decision on July 30, 2010, dismissing the Plaintiff's Complaint without prejudice. The Court found that the Plaintiff had no support at that time for his claims. However, the Court did find that Plaintiff was entitled to certain information that might normally be provided to a borrower under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 (West 2010), the Federal Truth-in-Lending Act, 15 U.S.C. §§ 1601-1665 (West 2010), and/or the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 (West 2010). Rather than dismiss the Third Amended Complaint with prejudice, the Court determined that the Plaintiff should carefully review what claims he could assert against the Defendants, and provided the Plaintiff with the final opportunity to assert cognizable claims against the Defendants in a Fourth Amended Complaint.

---

**1.** The Adversary Proceeding was designated No. 2:09-ap-01728-RTBP. Because the Honorable Redfield T. Baum entered an order of recusal from hearing any matter pertaining to Bank of New York Mellon, the undersigned judge was randomly assigned to hear the contested matters or adversary proceedings pertaining to these Defendants.

**2.** *See* Docket Entries No. 25 and 30. Those decisions are incorporated herein by reference.

On August 20, 2010 the Plaintiff filed his Fourth Amended Complaint. The Complaint again failed to state any causes of action that could be asserted against these Defendants under applicable state or federal law. In response, the Defendants filed the current Motion to Dismiss, requesting that the Plaintiff's Adversary Proceeding be dismissed **with prejudice**. The parties fully briefed the Motion to Dismiss, and the Court conducted oral argument on the Motion on November 9, 2010. At that hearing, the Court found that Plaintiff still had no support for his arguments in the Fourth Amended Complaint. However, in order to resolve, with finality, all of the Plaintiff's concerns regarding the loan documents, the Court ordered counsel for Defendants to produce the original custodial file held by BNY Mellon, in its capacity as Trustee, concerning the Plaintiff's loan. The Motion to Dismiss hearing was continued to January 19, 2011.

At the hearing held January 19, 2011, the Court directed counsel for Defendants to supply the Court with certain additional information that, if produced, would lead to the dismissal of this Adversary with prejudice. Specifically, the Court requested the following information: (1) how the Plaintiff's loan was placed into the Trust under the control of BNY Mellon, (2) once the Plaintiff's loan was transferred into the Trust, whether it remained in the Trust, (3) whether the Pooling and Servicing Agreement concerning the Trust contained a requirement that any loan placed in the Trust must have a specific endorsement, or whether any loan could be placed in the Trust with only a blank endorsement, and (4) the original or an appropriate copy of the assignment of the original deed of trust concerning the Plaintiff's loan, which would transfer the interest from the original mortgagee to, presumably, BNY Mellon, in its capacity as Trustee for the Trust. In response, the Defendants filed a Supplemental Memorandum and various declarations. The Plaintiff then filed a Response and Objection. After receiving these documents, the Court vacated the hearing scheduled for March 22, 2011, and now dismisses the Plaintiff's Fourth Amended Complaint. However, for the reasons stated hereinafter, the dismissal shall be without prejudice.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b) (West 2010).

## II. FACTUAL BACKGROUND

The Plaintiff executed a promissory note ("Note") on March 29, 2007. The Defendant, BNY Mellon, provided a series of endorsements on the Note, reflecting that Countrywide Bank, FSB, as the initial payee, transferred its interest to Countrywide Home Loans, Inc., which transferred its interest, by blank endorsement, to any holder in due course.[3]

At the same time, the Plaintiff executed a deed of trust concerning the property located at 2560 North Page Springs Rd, Cornville, AZ 86325 ("Deed of Trust"), which was recorded in Yavapai County on May 4, 2007.[4] The Deed of Trust serves as security for the repayment of the Note. The Plaintiff currently resides at the property and also utilizes it as a place for his business operations.

On May 1, 2007, several months after the closing on Plaintiff's loan, Bank of New York, now BNY Mellon, became the trustee of the Alternative Loan Trust 2007-HY4 pursuant to a pooling and servicing agreement ("PS Agreement").[5] Pursuant to the PS Agreement, Countrywide Home Loans was the master servicer[6] of all notes and deeds of trust

---

**3.** *See* the Declaration of Jacqui E. Whitney, Docket Entry No. 180, in the administrative case, No. 09-bk-6979-RTBP. The Declaration has a series of endorsements set forth on the last page of the Note, which is Exhibit A to the Declaration.

**4.** Id. The duly recorded Deed of Trust is attached to Ms. Whitney's Declaration as Exhibit B.

**5.** *See* Declaration of Ms. Whitney, Docket Entry No.180, in Administrative Case No. 09-bk-6979-RTBP.

**6.** Because Countrywide Home Loans, and certain affiliated or related entities, were acquired by Bank of America, the servicing duties were transferred to one or more Bank of America entities. BAC Home Loans Servicing LP is now the master servicer of the Plaintiff's

4

placed in the pool of loans that constituted the corpus or res of the Trust. The Plaintiff's Note and Deed of Trust were received by The Bank of New York Mellon Trust Company, N.A. ("BNY Trust"), as custodian for BNY Mellon, on May 23, 2007, and were placed in the BNY Trust vault in Cypress, California, the same day.[7] Plaintiff's Note and Deed of Trust were removed from the vault on January 6, 2011, as ordered by this Court for the January 19, 2011, hearing.[8] BNY Trust does not maintain records regarding whether the Plaintiff's file was accessed between May 23, 2007, and January 6, 2011.[9]

BNY Mellon and the BNY Trust entered into a separate Servicer Level Agreement in which BNY Trust was designated the agent responsible for all collateral documents to be held by BNY Mellon, as Trustee for the Alternative Loan Trust 2007-HY4 under the PS Agreement.[10] The BNY Mellon affiants state that they have verified and confirmed that the original Note, with the various endorsements as set forth above, is in the possession of BNY Trust as the designated agent of BNY Mellon as Trustee for the Trust.[11]

Section 2.01(c)(i)(A) of the PS Agreement provides that the transfer of loans is effective upon the delivery to the trustee of the Trust of

> the original Mortgage Note endorsed by manual or facsimile signature in blank in the following form: "Pay to the order of _____ without recourse," with all intervening endorsements showing a complete chain of endorsements from the

---

Note and Deed of Trust. Mortgage Electronic Registration System ("MERS") is the original nominee under the Deed of Trust and still acts in that capacity

**7.** See Supplemental Declaration of Keri A Giardino, Docket Entry No. 70, in the current Adversary Proceeding (09-ap-1728-SSC).

**8.** Id.

**9.** Id.

**10.** Id., See also Declaration of Ms. Susan Elsner, Docket Entry No. 181, Administrative Case No. 09-bk-6979-RTBP.

**11.** Id.

> originator to the Person endorsing the Mortgage Note (each such
> endorsement being sufficient to transfer all right, title and interest
> of the party so endorsing, as noteholder or assignee thereof, in and
> to that Mortgage Note).[12]

The original Note[13] is endorsed from the original lender, Countrywide Bank, FSB, to Countrywide Home Loans, Inc., who then endorsed the Note, in blank, as follows: "PAY TO THE ORDER OF _____ WITHOUT RECOURSE."[14] As mentioned above, BNY Trust as the designated agent of BNY Mellon, was in possession of the Note when it was removed on January 6, 2011.

At the January 19 hearing, after reviewing what was held in the custodial file and to resolve all issues between the Plaintiff and the Defendants, the Court ordered the Defendants to provide the original or an assignment of the Deed of Trust. Defendants have failed to do so. The Plaintiff asserts that the PS Agreement requires the Defendants to record an assignment of the Deed of Trust within 120 days of the Loan being placed in the Trust. In support of his position, the Plaintiff cites to a portion of Section 2.01(c) of the PS Agreement, which provides as follows::

> As promptly as practicable subsequent to such transfer and
> assignment, and in any event, within one hundred twenty (120)
> days after such transfer and assignment, the Trustee shall (A) as
> the assignee thereof, affix the following language to each
> assignment of Mortgage: "CWALT Series 2007-HY4, The Bank
> of New York as trustee", (B) cause such assignment to be in proper
> form for recording in the appropriate public office for real property
> records and (C) cause to be delivered for recording in the
> appropriate public office for real property records the assignments

---

**12.** *See* Pooling and Servicing Agreement dated May 1, 2007 ("PS Agreement"), p. 44. attached as Exhibit A to Defendants' Supplemental Memorandum in Support of Motion to Dismiss, Docket Entry No. 69 in the current Adversary Proceeding (09-ap-1728-SSC).

**13.** A copy of the original Note is attached as Exhibit A to the Declaration Of Jacqui Whitney, Docket Entry No. 180, Administrative Case No. 09-bk-6979-RTBP. As noted previously, the Court reviewed the original Note when the custodial file was presented to it at the January 2011 hearing.

**14.** *See* Note, at 4.

of the Mortgages to the Trustee . . . .[15]

The Defendants argue that this portion of the PS Agreement relates to non-MERS loans only and is, therefore, inapplicable to the Plaintiff's loan. They state that there is no requirement that loans originated as MERS loans (such as the Plaintiff's loan) be accompanied by a separate assignment document. The Defendants rely on Section 2.01(c)(iii) of the PS Agreement in support of their position, which outlines the requisite documentation to be held by BNY Mellon, as Trustee, and states as follows:

> (iii) in the case of each Mortgage Loan that is not a MERS Mortgage Loan, a duly executed assignment of the Mortgage or a copy of such assignment, with recording information (which may be included in a blanket assignment or assignments), together with, except as provided below, all interim recorded assignments of such mortgage or a copy of such assignment, with recording information (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates) . . . ;[16]

## III. DISCUSSION

The Court requested further information on the endorsements allowed under the PS Agreement because the Plaintiff insisted that only specific endorsements were valid. As noted in the portion of the PS Agreement cited herein, Plaintiff is mistaken. The PS Agreement clearly states that the Note may be endorsed "in blank in the following form: 'Pay to the order of _____ without recourse,' " Plaintiff also incorrectly argues that the other language in the same portion of the PS Agreement, requiring that "all intervening endorsements showing a complete chain of endorsements from the originator to the Person endorsing the Mortgage Note," requires something more than blank endorsements. Blank endorsements are clearly allowed under the PS Agreement, and a complete chain of endorsements is clearly contained on the Note.

---

**15.** *See* PS Agreement, p. 47.

**16.** *See* PS Agreement, p. 45.

As mentioned above, the original Note is endorsed from the original lender, Countrywide Bank, FSB, to Countrywide Home Loans, Inc., who then endorsed the Note, in blank, as follows: "PAY TO THE ORDER OF _____ WITHOUT RECOURSE." This was sufficient to transfer the interest in the Note pursuant to the PS Agreement.

The Court also requested information on the placement of the Plaintiff's loan into the Trust. The Plaintiff's custodial loan file was placed in the BNY Trust vault, as agent for BNY Mellon, on May 23, 2007. Since the PS Agreement was signed on May 1, 2007, the custodial loan file was properly placed in the custody of BNY Trust within the 30-day period. Therefore, any arguments of the Plaintiff to the contrary are not valid.[17]

However, the Defendants have not produced an assignment of the Plaintiff's Deed of Trust reflecting its transfer to BNY Mellon. BNY Mellon argues that an assignment of the Deed of Trust is not required in this case, because Plaintiff's loan was a MERS loan and the PS Agreement does not require MERS loans to include a separate assignment of the deed of trust in order to be included in the CWALT Trust. The Defendants' conclusion misses the point. Even if the assignment is not required under the PS Agreement, it may create an issue as to the nature, extent, and validity of the security interest vis a vis the Plaintiff as a debtor in possession in this Chapter 11 case.

By way of background, in reviewing whether a creditor asserting a lien on real property has set forth a *prima facie* case (in a motion for relief from the automatic stay, for example), the court must consider under what chapter of the Bankruptcy Code the debtor has filed. For instance, if the individual debtor has filed a chapter 7 petition, a trustee in bankruptcy is appointed and is charged with collecting and liquidating, if necessary, the non-exempt

---

**17.** The Court is somewhat troubled by BNY Trust's statement that it does not maintain records reflecting whether its custodial files are accessed, or removed, after being placed in its vault. The absence of records may create a dispute as to whether a particular file may have been improperly handled or altered. However, when this Court reviewed the custodial loan file for Plaintiff's loan, it did not see any irregularities or alterations on any of the documents contained in the file.

8

property of the debtor for distribution to the debtor's creditors, according to the priorities set forth in the Bankruptcy Code.[18] The trustee in bankruptcy may increase the amount of property of the estate available for distribution to creditors by exercising certain avoidance powers enumerated, *inter alia,* in Bankruptcy Code Sections 544, 547, and 548.[19] An individual debtor may acquire the same duties and responsibilities of a trustee in bankruptcy by filing a chapter 11 petition, seeking to reorganize or to file a plan of liquidation.[20] Because the debtor in possession is vested with the same powers of the trustee, the debtor in possession may pursue avoidance actions as well.[21] In this case, the individual Debtor filed a chapter 11 petition seeking to reorganize, and no bankruptcy trustee has yet been appointed in this case. As a result, the Debtor exercises the rights of a bankruptcy trustee concerning the ability to avoid certain transfers or transactions.

Because of the avoidance powers of the bankruptcy trustee or the debtor in possession, this Court requires that if a party seeking relief from the automatic stay asserts a perfected security interest in any property of the estate, that moving party must be able to present at least a *prima facie* case that it has such a perfected security interest under applicable law.[22] The fact that the transaction is not avoidable between the parties to the underlying loan transaction is not dispositive of whether the transaction may be avoided by third parties that are, for instance, *bona fide* purchasers.[23]

The Court is aware of ARS § 33-817, which states, "The transfer of any contract

---

**18.** *See,* for instance, 11 U.S.C. §§ 701, 702, 704, 541, 522, 507, and 726 (West 2010).

**19.** *See* 11 U.S.C. §§ 544, 547, and 548 (West 2010).

**20.** *See* 11 U.S.C. §§ 1101, 1107, 1108, 1121, and 1129 (West 2010).

**21.** *See* 11 U.S.C. §§ 1107, 544, 547, and 548 (West 2010).

**22.** Nor is such a requirement unusual. See In re DBSI, Inc., 432 B.R. 126 (Bankr. D. Del. 2010); In re Gunnison Center Apartments, LP., 320 B.R. 391 (Bankr. D. Colo. 2005).

**23.** *See* 11 U.S.C. § 544(a)(3) (West 2010).

or contracts secured by a trust deed shall operate as a transfer of the security for such contract or contracts." ARS § 33-817. The Court further acknowledges that the Supreme Court of Arizona has held that a mortgage is a "mere incident to the debt," and its "transfer or assignment does not transfer or assign the debt or the note," but "the mortgage *automatically* goes along with the assignment or transfer" of the note. Hill v. Favour**,** 84 P.2d 575, 578 (Ariz. 1938) (emphasis added). However, ARS §33-818 poses a potential problem. It states, in pertinent part:

> [A]ssignment of a beneficial interest under a trust deed, . . . shall from the time of being recorded impart notice of the content to all persons, including subsequent purchasers and encumbrancers for value.

Given that the Arizona legislature has not rescinded Section 33-818, it must be interpreted in a manner that allows it to be consistent with other statutory provisions without reducing the Section to surplusage. An Arizona appellate court, in reviewing the issues, stated that Arizona law requires that if a secured creditor with a lien on the borrower's real property wishes to ensure that said interest is not subject to the claims of a *bona fide* purchaser, that secured creditor should record an assignment of its interest with the Recorder in the County in which the borrower's real property is located. If notice of the assignment has not been provided, through recordation, the secured creditor may have its interest avoided by a *bona fide* purchaser. *See* Rodney v. Arizona Bank, 836 P.2d 434, 172 Ariz. 221 (Ariz. App. Div. 2 1992) (Unless and until the transferee of the beneficial interest in the deed of trust records an assignment of the deed of trust, the security interest in the real property remains unperfected.).[24] Thus, under Arizona law, a potential subsequent *bona fide* purchaser for value may have a basis to set aside an assignment of real property that is not duly recorded. Whether this Debtor has the ability to proceed, as a Debtor in Possession, and set aside BNY Mellon's secured transaction is not currently before this Court. However, BNY Mellon could have resolved the issue if it had

---

**24.** The Appellate Court sets forth, *in dicta,* an interesting analysis of the rights and remedies of the borrower vis a vis the original lender and the relative priorities of two lenders that believed that they obtained a perfected security interest on the borrowers' real property.

10

1 | simply produced the assignment of the Deed of Trust, as requested by this Court. BNY Mellon
2 | has not done that. Unfortunately, on this record, this Court is not able to resolve all issues
3 | between the Plaintiff and the Defendants, so that it may dismiss this Complaint with prejudice.

The Court ordered BNY Mellon to produce the original or a a copy of the assignment of the Deed of Trust. It is unclear why BNY Mellon did not supplement the record to provide the document. Although BNY Mellon correctly points out that the PS Agreement does not require an assignment of a deed of trust for MERS loans, that does not change the requirements of Arizona or federal law, as outlined herein.

The fact that no assignment has been produced to the Court at this time does not vitiate BNY Mellon's loan or its security interest in the Plaintiff's real property. This Court does not absolve the Plaintiff of his responsibility to pay the Loan in question. BNY Mellon's failure to produce the assignment, however, does not allow this Court to dismiss this Complaint with prejudice and finally end the dispute between these parties. Therefore, the Court hereby dismisses this Adversary Proceeding without prejudice. However, the Plaintiff is cautioned not to file another adversary proceeding against any of these Defendants until he has carefully reviewed the law, or retained counsel to assist him, and is able to a cognizable claim against a third party.

IV. CONCLUSION

Based upon the foregoing,

IT IS ORDERED that the Plaintiff's Fourth Amended Complaint is dismissed without prejudice.

IT IS FURTHER ORDERED that the Clerk's Office shall provide notice of this order to the Plaintiff, the Defendants, and the Defendants' counsel, and file an affidavit of

service thereon.

DATED this 3rd of May, 2011.

*/s/ Sarah Sharer Curley*

Honorable Sarah Sharer Curley
United States Bankruptcy Judge

**BNC TO NOTICE**

12